FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

04 JUL 15 PM 4: 22

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **PEGGY MCDONALD, etc.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CV 04-PT-547-E** |
| | ) | |
| **MONSANTO COMPANY a Delaware corporation, et al** | ) | |
| | ) | |
| **Defendants.** | ) | |
| **and** | ) | |
| | ) | |
| **LAWANNA FLEMING** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CV 04-PT-546-E** |
| | ) | |
| **MONSANTO COMPANY, a Delaware corporation, et al** | ) | |
| | ) | |
| **Defendants** | ) | |
| **and** | ) | |
| | ) | |
| **MARGARET ANN WATSON, etc.** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **CV 04-PT-545-E** |
| | ) | |
| **MONSANTO COMPANY, a Delaware corporation, et al** | ) | |
| | ) | |
| **Defendants** | ) | |
| **and** | ) | |
| | ) | |
| **STEVE COOPER** | ) | |
| | ) | |
| **Plaintiff** | ) | |

ENTERED

JUL 15 2004

1

vs.                                    )        **CV 04-PT-543-E**
                                       )
**MONSANTO COMPANY, etc., et al**      )
                                       )
        **Defendants.**                )

## MEMORANDUM OPINION

This cause comes on to be heard upon the various plaintiffs' Motions to Remand or Abstain,

filed on March 19, 2004, April 13, 2004, and April 14, 2004.

### FACTS AND PROCEDURAL HISTORY

In September of 1997, defendants assert,[1] Pharmacia (f/k/a Monsanto Company) entered into

a Distribution Agreement with Solutia (the "Distribution Agreement"), pursuant to which Solutia

expressly assumed financial responsibility for and agreed to indemnify Pharmacia for all claims,

expenses (including attorneys' fees), and/or liabilities related to the former chemical businesses of

the former Monsanto Company ("Old Monsanto"), including the manufacturing of PCBs in

Anniston, Alabama (the "PCB business.")[2] *See* Paley Affidavit (to which a copy of the Distribution

Agreement is attached as Exhibit A).[3]  In September 2000, Pharmacia entered into a Separation

Agreement with a newly formed entity now known as Monsanto Company (" New Monsanto")

whereby New Monsanto agreed to indemnify Pharmacia for any liabilities that Solutia had assumed

from Pharmacia in the event Solutia failed to perform under the Distribution Agreement. *Id.* (to

which a copy of the Separation Agreement is attached as Exhibit B).  Pharmacia, New Monsanto,

---

[1] Defendant Solutia has not responded to plaintiffs' motions to remand.

[2] Pharmacia is effectively, Old Monsanto.

[3] Mr. Paley is currently employed by Monsanto as its Vice President and Treasurer.

2

and Solutia entered into an Amendment to the Distribution Agreement (the "Amendment), dated July 1, 2002, which provides that Solutia is expressly obligated to indemnify, defend, and hold harmless New Monsanto and Pharmacia for all claims, expenses, and/or liabilities related to the PCB business. *Id.* (to which a copy of the Amendment is attached as Exhibit C). [4]

According to the Distribution Agreement, defendants contend, Solutia contractually assumed and is obligated to indemnify and defend Pharmacia and New Monsanto and bear full responsibility for all costs and expenses associated with the defense of this action. *See* Paley Affidavit. Additionally, defendants allege, under the Distribution Agreement's terms and conditions, Solutia is obligated to pay any judgment entered against Pharmacia and New Monsanto in this action. *Id.* Solutia's obligations to Pharmacia and New Monsanto under the Distribution Agreement apply whether or not Solutia is a party to this case.[5]

On December 17, 2002, Solutia filed a voluntary petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330, in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Solutia is a debtor and debtor in possession in the bankruptcy case, which is being jointly administered under the case *In Re Solutia Inc., et al.,* Case No. 03-17949 (PCB)(the "Bankruptcy Action.") *See* Def. Ex. 2. In a press release issued by Solutia on December 17, 2003, the company stated:

> The decision to file [bankruptcy] was made to obtain relief from the negative impact on the Company caused by legacy liabilities, which include litigation and settlement costs, environmental remediation and Monsanto retiree healthcare obligations, Solutia was required to assume

---

[4] Neither the Paley affidavit nor the parties' briefs appear to quote or otherwise cite particular sections of the Distribution Agreement or other applicable agreements as providing for this indemnification.

[5] There is admittedly a significant issue as to whether New Monsanto could have any liability in this case.

> when the company was spun-off from the former Monsanto Company,
> which is now known as Pharmacia, a wholly owned subsidiary of Pfizer.
> (Emphasis added).

*See* Def. Ex. 3. According to defendants, this lawsuit is part of the "legacy liabilities" which Solutia

has cited as a primary motivation for Solutia's reorganization effort. *See* Paley Affidavit.

On September 29, 2000, December 10, 2003 and December 31, 2003, plaintiff filed

complaints in the Calhoun County Circuit Court and on December 30, 2002 in Talladega County

Circuit Court. The complaints alleged that defendants have for years released toxic and hazardous

chemicals or pollutants in the air, soil, and/or surface water of areas frequented by plaintiffs in

Calhoun County, Alabama. These chemicals, which included PCBS, allegedly caused injuries and

death and have affected the health of various plaintiffs as well as the natural environment in which

the plaintiffs and their property are located.

The complaints alleged the following: Count I (Negligence) in manufacturing,

supervision/control of the manufacturing process, discharge of chemicals, and allowing the

chemicals to remain in the area of discharge); Count II (Wantonness) for essentially the same

conduct; Count III (Breach of Duty to Warn) for essentially the same conduct; Count IV (Fraud,

Misrepresentation and Deceit); Count V (Nuisance); Count VI (Trespass); Count VII (Common Law

Tort Liability); Count VIII (Unlawful Taking of Property); and Count IX (Products Liability Under

AEMLD and Strict Liability).

Defendants have removed these actions to federal court pursuant to 28 U.S.C. §§ 1334 and

1452. According to defendants, these cases were timely removed pursuant to Federal Bankruptcy

Rule 9027, which provides that, where the removed civil action was initiated before the filing of the

bankruptcy action, a notice of removal under 28 U.S.C. 1452 may be filed within the longest of (a)

90 days after the order for relief in the bankruptcy action; (b) 30 days after entry of an order

terminating a stay; or (c) 30 days after a trustee qualifies in a Chapter 11 reorganization case, but not

later than 180 days after the order for relief. Prior to the removals, none of the time limitations had

expired.

## MOTION TO REMAND STANDARD

Federal courts are courts of limited jurisdiction. *See Russell Corp. v. American Home

Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001). Therefore, federal courts have power to hear

only those cases that they have been authorized to hear by the Constitution or by Congress. *See

Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The limited nature of

federal court jurisdiction has caused the Eleventh Circuit to favor remand of removed cases where

federal jurisdiction is not absolutely clear. *Russell Corp.*, 264 F.3d at 1050. The removal statute is

to be construed narrowly with doubt construed against removal. *See Shamrock Oil & Gas Corp. v.

Sheets*, 313 U.S. 100, 107-09 (1941).

A case may be removed to federal court only if the case could have been brought originally

in federal court pursuant to the court's diversity or federal question jurisdiction. *See* 28 U.S.C. §

1441(a). However, diversity will not support removal jurisdiction if any properly joined defendants

are citizens of the state in which the suit was originally filed. *See* 28 U.S.C. § 1441(b). The

determination of whether federal jurisdiction exists must be made on the face of the plaintiff's well-

pleaded complaint. *Pacheco De Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). An

anticipated or even inevitable federal defense generally will not support removal. *Id.* at 1373 (citing

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392-93 (1987)). The burden of establishing federal

jurisdiction is placed on the defendant, with all doubts resolved in favor of remand, *Diaz v.*

*Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996).  When multiple defendants are involved, all defendants must consent to removal.  *Russell Corp.*, 264 F.3d at 1050.

## ARGUMENTS[6]

### I.    Plaintiff's Motion to Remand

This civil action, plaintiff argues, is completely outside federal jurisdiction, relying on *City of Birmingham Retirement & Relief Fund v. Citigroup, Inc.*, 2003 WL 22697225 (N.D. Ala. 2003)("[J]urisdiction over non-bankruptcy controversies with third parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy do not exist.")  As in *In re Robertson*, 140 F .Supp. 2d 1274 (M.D. Ala. 2001), plaintiff argues, this proceeding is a "non-core" proceeding required to be remanded the state court for determination.  Regarding whether mandatory abstention applies to removed cases, plaintiff asserts, *Robertson* held that § 1334(c)(2) applies to state law claims that have been removed to federal court under section 1452(a).  The *Robertson* holding, plaintiff argues, simply followed *Christo v. Padgett*, 223 F.3d 1324, 1331 (11th Cir. 2000), which held that the mandatory abstention statute does apply to state law claims that have been removed to federal court on the basis of bankruptcy jurisdiction.

According to plaintiff, *Robertson* determined that remand or in the alternative, abstention, were proper actions for the district court to take with regard to garden variety tort and breach of contract cases (such as the instant case).  Plaintiff then argues: "Defendants here do not even make a contention that this case involves 'core proceedings' as defined in 28 U.S.C. section 157.  Whether or not the liquidation of the claim against the debtor (here, the non-party, Solutia, Inc.) is or is not

---

[6]Since all the issues with regard to all plaintiffs are the same, the court will refer to all plaintiffs as "the plaintiff."  All the plaintiffs make the same general arguments.

a 'core proceeding,' it is clear that the claims of the plaintiff against the other parties are not core proceedings."

Plaintiff bases the motion to remand on both 28 U.S.C. §§ 1452(a) and (b). Regarding subsection (a) (which provides for removal jurisdiction under section 1334), plaintiff contends, there is no "related to" jurisdiction. Regarding subsection (b)(regarding remand "on any equitable ground"), plaintiff asserts that such grounds exist in the instant case.

Plaintiff deems *City of Birmingham* analogous. The *City of Birmingham* court, plaintiff notes, found any uncertainties regarding federal jurisdiction were to be resolved in favor of remand. The case further analyzed the alleged bankruptcy "related to" jurisdiction. While defendants argued that some inter-connections between the defendants made the lawsuit "related to" the bankruptcy, the *City of Birmingham* court disagreed, finding "the law suit's potential effect on the estate was speculative and premature" and that the law suit was "at best, a mere precursor to the potential third party claim for indemnification" by the defendant against the debtor. Further, the court cited with approval *Skylark v. Honeywell International, Inc.*, 2002 WL 32101980 (S.D. Fla. 2002). In that case, plaintiff notes, Honeywell removed a plaintiff's claims that asbestos caused a terminal cancer based on the potential for cross-claims or contribution/indemnity claims which might be made against a party that had filed Chapter 11. *City of Birmingham* noted with approval *Skylark's* finding that the potential claims were too far removed to support removal. In both *City of Birmingham* and *Skylark*, plaintiff argues, the courts determined that the proper procedure was to grant motions to remand or abstain.

Plaintiff contends: "This present civil action has less to do with any bankruptcy case than any reported decision we could find." Precedent in favor of remand, plaintiff argues, includes

7

*Thomasson, see supra.* There, the case was removed pursuant to 28 U.S.C. section 1452(a), and the

court had to interpret 28 U.S.C. 1452(b), which allows remand of claims related to bankruptcy cases

"on any equitable ground." In addition to *Thomasson*, plaintiff relies on the interpretative limitations

to § 1334 recognized in *The Matter of Lemco Gypsum, Inc.*, 910 F.2d 784 (11th Cir. 1990).  The

Eleventh Circuit in *Lemco* stated: "This court is ... concerned that an overbroad construction of

section 1334(b) may bring into federal court matters that should be left for state courts to decide."

*Lemco* further provided:

> In exploring the bounds of this nexus we endeavor to seek a definition for
> 'related to' that best represents Congress' intent to 'reduce substantially the
> time-consuming and expensive litigation regarding a bankruptcy court's
> jurisdiction over a particular proceeding.'  The interpretation of § 1334(b)
> must also avoid the inefficiencies of piecemeal adjudication and promote
> judicial economy by aiding in the efficient and expeditious resolution of all
> matters connected to the debtor's estate.

Plaintiff also highlights *In re Carver*, 954 F.2d 1573 (11th Cir. 1992).  There, the Eleventh

Circuit stated: "It is precisely this type of situation, where determination of an issue otherwise within

the jurisdiction of the bankruptcy court would entangle the court in matters primarily of state concern

that Congress addressed in the statute outlining the bankruptcy jurisdiction of the federal courts.  28

U.S.C. § 1334(c)(1) provides: 'Nothing in this section prevents a district court in the interest of

justice, or in the interest of comity with state courts or respect for state law, from abstaining from

hearing a particular proceeding arising under Title 11 or arising in or related to a case under Title

11.'"  The *In re Carver* court held that the district court should have abstained.

Again citing *Thomasson*, plaintiff argues that even if the case were properly here under

bankruptcy jurisdiction this court would have "original but not exclusive jurisdiction" under 28

U.S.C. 1334 and should remand.  Plaintiff contends: "The defendants certainly must acknowledged

8

(*sic*) that the state court from whence these claims were removed also has jurisdiction over the controversy (the state circuit courts being courts of general jurisdiction and section 1334 specifying that the federal court's jurisdiction is not exclusive). Furthermore, this particular state court will actually be applying state law in trying the case."

Turning to "equitable remand", plaintiff cites *Collier on Bankruptcy* (cited approvingly in *Moore's Federal Practice*) as follows: "The remand may be made on 'any equitable ground,' which includes: (1) forum non conveniens; (2) a holding that, if the civil action has been bifurcated by removal, the entire action should be tried in the same court . . . [etc.]" *Collier on Bankruptcy*, 15th edition, section 301[5][g].

The seven factors cited in *Thomasson* (derived from *In Re Hughes v. Bechtol, Inc.*, 107 B.R. 552, 560 (Bk. S.D. Ohio 1989)), plaintiff argues, favor remand in the instant case. First, plaintiff contends, "duplicative and uneconomical effort of judicial resources in two forums" would apply considering the questionable subject matter jurisdiction under the "related to" provision (where the "related" case is in New York) and the jurisdiction excludes the present civil action as a claim by a third party against a third party. Second, plaintiff asserts, the factor "prejudice to the involuntarily removed parties" applies, "since keeping the case will slow down the progress of the case, eliminating ... [plaintiff's] opportunity for an early trial in state court, and increase the cost of both pre-trial discovery and the trial itself." While forum non conveniens in the traditional sense does not seem applicable considering the one-block distance between the federal and county courthouses in Anniston, plaintiff contends: "[T]he other factors cited herein make the limited jurisdiction federal

bankruptcy system 'non conveniens' by comparison with the general jurisdiction state courts."[7] According to plaintiff, the fifth element, "comity considerations," also favors remand since there was a civil action pending in state court from which these claims were removed.  Regarding the sixth element – "possibility of an inconsistent result" – plaintiff argues: "The sixth element ... certainly is enhanced if the interrelated claims are tried in two different courts, at two different times." Finally, plaintiff argues, the element of "expertise of the court in which the matter was pending originally" favors remand, since the pending claims are state law claims, and the state law judge has substantial expertise concerning the laws and rules governing fraud, conspiracy, and other state law torts at issue.  In this vein, plaintiff contends: "The Judge in the lower court has just spent two years trying a case with the same facts and issues; the longest running civil trial in East Alabama history."[8]

Finally, plaintiff argues, this court lacks bankruptcy jurisdiction under Eleventh Circuit case law.  Again, plaintiff quotes *Lemco* and argues that the *Lemco* court addressed the particular circumstance of certain subject property being in third-party hands and thus not being able to affect the estate.  The *Lemco* court found: "The fact that property was once owned by a bankrupt does not supply jurisdiction of all future disputes concerning the property.  The broad jurisdictional provisions set forth in § 1334 grant the district court power to supervise the entire restructuring of the debtor's estate.  However, once property is sold, the disputes have nothing to do with the debtor's estate."  *Lemco* indicated that "such property may not be hauled back into the estate."

---

[7] In this regard, plaintiff again relies on *Thomasson*'s statement: "This Court is of the opinion that the ends of justice might be better served if this case is remanded to the state court (this being a consideration of forum non conveniens)."

[8] Plaintiff points out that the avoidance of piecemeal litigation was cited as a factor in regards to the decision to exercise discretionary abstention.  *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17-19 (1983).

Here, plaintiff argues, there is no pursuit of Solutia or any property of the estate of Solutia. Instead, plaintiff asserts, the lawsuit seeks to recover damages which the plaintiff claims were caused by defendants. Plaintiff reminds this court that the state law of products liability, nuisance, trespass, fraud, etc. will apply to all decisions in the pending action. The *Lemco* situation, plaintiff argues, warranted a stronger argument in favor of bankruptcy jurisdiction in the federal courts than the instant case, since one of the parties had been in civil contempt of a federal court order. Nonetheless, plaintiff notes, the Eleventh Circuit in *Lemco* reversed both the bankruptcy court order and the district court's finding that defendants had intentionally refused to comply with the order so, in the district court's words, "there had been no final disposition of the sale articles which would divest the bankruptcy court of jurisdiction over the matter." *See Lemco* at 786.

Furthermore, plaintiff contends, *In Re Gallucci*, 931 F.2d 738 (11th Cir. 1991) sheds light on the breadth of "related to" jurisdiction. The procedural posture of *Gallucci* was described as follows:

> This case involves a turnover proceeding brought in the Bankruptcy Court for the Middle District of Florida. The trustee in the bankruptcy sought an order requiring Angelina Gallucci (Mrs. Gallucci) to vacate her home in Warwick, Rhode Island and to turn over the possession thereof to him. During the proceeding, Mrs. Gallucci failed to appear for a deposition, and the bankruptcy court, on the trustee's motion, entered an order striking her defensive pleadings as a sanction for her failure to discover. She appealed to the district court, and that court affirmed.
>
> Mrs. Gallucci's son, Michael Gallucci, Jr., became insolvent in 1981, [FN1] and a trustee, Charles Grant, was appointed to administer the bankruptcy estate. [FN2] In 1984, Grant instituted an adversary proceeding against Mrs. Gallucci, among others, [FN3] claiming that her home was property of the estate and must be turned over to the trustee pursuant to 11 U.S.C. § 542 (1988). [FN4] Mrs. Gallucci subsequently filed an action in the Superior Court of Rhode Island to quiet title to the property. Grant removed that action to the United States Bankruptcy Court for the District of Rhode Island; that court transferred it to the Bankruptcy Court for the Middle District of Florida, which consolidated the quiet title and turnover proceedings for trial pursuant to Fed.R.Civ.P. 42(a).

11

The Eleventh Circuit reviewed applicable law in reaching its conclusion.

Although bankruptcy courts by statute may hear "any or all cases under title 11 and any or all core proceedings arising under title 11 or arising in or related to a case under title 11," 28 U.S.C. § 157(a) (1988), they may not entertain cases involving noncore, unrelated matters, *see, e.g., Pacor Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) ( "[J]urisdiction over nonbankruptcy controversies with third parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy does not exist.") (quoting *In re Haug*, 19 B.R. 223, 224-25 (Bankr.D.Ore.1982)); *In re Holland Indus.*, 103 B.R. 461, 465 (Bankr.S.D.N.Y.1989) ("Bankruptcy courts have no jurisdiction to entertain civil proceedings that are neither core proceedings nor related proceedings."). The instant case involves property that never belonged to the debtor but that a third party, Gaudio, quitclaimed to the trustee to "compromise" the trustee's concededly baseless claim against him. We now consider whether the bankruptcy court had jurisdiction to entertain a turnover action involving this property, i.e., was this action a core or related proceeding to Michael Gallucci, Jr.'s bankruptcy.

The *Gallucci* court then stated:

If the action does not involve property of the estate, then not only is it a noncore proceeding, it is an unrelated matter completely beyond the bankruptcy court's subject-matter jurisdiction. This can be gleaned from a general principle of bankruptcy law: if the resolution of litigation cannot affect the administration of the estate, the bankruptcy court does not have jurisdiction to decide it. For example, in *In re Denalco Corp.*, 57 B.R. 392 (N.D.Ill.1986), two secured creditors asked the bankruptcy court to determine which of them had the superior interest in a piece of the debtor's equipment; the bankruptcy trustee disclaimed any interest in the equipment since the creditors' claims exceeded its value. On these facts, the district court held that the action was a noncore, unrelated matter; the resolution of the creditors' competing claims could not affect either the assets or the liabilities of the debtor's estate. Id. at 395; see also Pacor Inc., 743 F.2d at 995; In re Dickenson Lines, 47 B.R. 653, 656 (Bankr.D.Minn.1985) ("The usual test for determining whether a civil proceeding is related to a bankruptcy proceeding is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."); In re McKinney, 45 B.R. 790, 791-92 (Bankr.W.D.Ky.1985) ( "it is only upon 'property of the estate' that this Court has ever been permitted to have any direct judicial impact").

In the instant case, the trustee contends that the Rhode Island property became property of the estate as a result of Gaudio's quitclaim deed to him . . . .

The Eleventh Circuit vacated the district court's order for lack of jurisdiction. As in

12

*Gallucci*, plaintiff argues, the present case is long past affecting the bankrupt's estate, as the Solutia estate will be parceled out in a plan that will be confirmed in New York. The claims in this case, plaintiff contends, are solely against non-bankrupt parties. Plaintiff relies on dicta from *In re Brickell Investment Corporation*, 922 F.2d 696 (11th Cir. 1991): "The *In re Davis* court reflected on the transient nature of the bankruptcy estate, stating that it did not even exist before bankruptcy or while the conduct which was the subject matter of the lawsuit for which attorney's fees were sought was ongoing." Rather than implicating a bankrupt estate, plaintiff argues, the complaint alleges acts committed by each of these separate defendants, who are not bankrupt.

In the alternative, plaintiff seeks mandatory abstention under section 1334(c)(2), which provides: "Upon timely motion of a party in a proceeding based upon a state law claim or state law cause of action, related to a case under Title 11 but not arising under Title 11 or arising in a case under Title 11, with respect to which an action could not have been commenced in a Court of the United States absent jurisdiction under this section, the District court <u>shall abstain</u> from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction." Plaintiff points out that the section reads "if an action is commenced" rather than "if an action is pending in state court." In this regard, plaintiff argues:

> Congress' intent to have this section support a devolution of state law issues back to the state courts is indicated by a recent amendment to section 1334 making decisions to retain case (i.e., not to abstain) appealable, while leaving decisions to remand non-appealable.
>
> It has been argued that if that section does not apply to a removed action, because there was "no pending action in state court to support mandatory abstention," then one would have to virtually say that this subsection is meaningless. When would the section have effect if it didn't apply to removed actions? If the action was still in a state court, un-removed, why would anyone be talking about "abstaining?" If the plaintiff filed an

13

action in the federal court and there was already an action in state court embodying the same issues, the code section would be unnecessary because of 200-year-old law that there can't be two actions pending on the same issue at the same time (sometimes called the doctrine of "lis pendens." Judge Albritton answered this question in *In re Robertson, supra.*

In the alternative, plaintiff concludes, section 1334(c)(1) provides another basis for abstention based on the interests of justice, comity with state courts, and respect for state law.

## II.   Defendants' Response

### A.   <u>This Court Has Jurisdiction Because the Proceeding is "Related To" Solutia's Bankruptcy.</u>

28 U.S.C. section 1452 provides for removal of "any claim or cause of action in a civil action . . .to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Section 1334(b) provides: "[T]he district courts shall have original but not exclusive jurisdiction <u>of all civil proceedings arising under title 11, or arising in or related to cases under title 11.</u>" (Emphasis added). In the Eleventh Circuit, a proceeding is "related to" a bankruptcy action if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *See In re Daniel Boone*, 52 F.3d 958, 960 (11th Cir. 1995)(citations omitted). According to defendants, by creating "related to" jurisdiction under the bankruptcy removal provisions, Congress intended to provide federal courts with an extremely broad grant of jurisdiction. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995); *In re Wood*, 825 F.2d 90, 92 (5th Cir. 1987). This grant of comprehensive jurisdiction, *Celotex* provided, was intended to allow federal courts to address all matters related to a bankruptcy estate and promote the efficient and expeditious resolution of a bankruptcy proceeding. *Id.* at 308. "[T]he policy behind the broadly defined 'related to' bankruptcy

14

jurisdiction is 'to avoid the inefficiencies of piecemeal adjudication and promote judicial economy by aiding in efficient and expeditious resolution of all matters connected to the debtor's estate.'" *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 2002 WL 32107216, *6 (S. D. Tex. 2002)(quotation omitted).

By defendants' account, the outcome of this proceeding will clearly affect Solutia's bankruptcy estate as: (1) Solutia is a named defendant in this case; and (2) Any claim against Pharmacia in this case is also a direct claim against Solutia as a result of the indemnification agreement. Defendants assert that Pharmacia's costs in defending itself and managing this lawsuit (as opposed to Solutia doing so) and the ultimate size of the claim (regardless of whether through settlement or trial) will impact other creditors of Solutia, Solutia's bankruptcy estate, and potentially Solutia's ability to reorganize successfully.[9]   Furthermore, defendants argue, Solutia's indemnification obligations regarding this lawsuit were not contingent upon or subject to any particular outcome of this case, as they <u>were absolute and already being fulfilled at the time the bankruptcy was initiated</u>. *See supra,* n. 3.  Additionally, defendants argue, Solutia's failure to perform its assumed obligations also implicates the contractual indemnity owed by New Monsanto to Pharmacia to pay all liabilities not paid by Solutia relating to this lawsuit.

Based on the foregoing, defendants assert, this case <u>is</u> "related to" Solutia's bankruptcy proceeding, thereby giving this court section 1334(b) jurisdiction. *See In re Wood*, 825 F.2d 90, 97-98 (5th Cir. 1987)(holding that a lawsuit involving claims against the debtor falls under "related to" jurisdiction); *Coward v AC and S, Inc.*, 2004 WL 75425, *4 (5th Cir. 2004)(holding that "related to" jurisdiction encompasses cases "where a non-debtor has a contractual agreement with the debtor for

---

[9] Defendants rely on the Paley affidavit.

indemnification under which a judgment would essentially bind the debtor.")

Defendants criticize plaintiff's contention that these claims against Pharmacia are not subject to the assumption and indemnification provisions of the Distribution Agreement between Solutia and Pharmacia.[10]   This position, defendants argue, ignores the plain language of the Distribution Agreement as well as language from *City of Birmingham*. *See supra, City of Birmingham* at *3 (N.D. Ala. slip op. 2003)("To be related to bankruptcy, 'the proceeding need not necessarily be against the debtor or against the debtor's property.'") Thus, defendants argue, Solutia's status as a party to this case has no bearing on its obligations to Pharmacia under the Distribution Agreement; even if Solutia wasn't a party to this case, Solutia has agreed to contractually assume all of Pharmacia's liability and to indemnify Pharmacia for all costs/expenses related in any manner to the former PCB business.

Plaintiff's suit, defendants assert, is based on the former PCB business and thus falls squarely within the scope of the Distribution agreement.   According to defendants, Solutia is not paying to defend Pharmacia's interests in this suit, thus resulting in mounting defense costs and a daily increase of Pharmacia's contractual claim against Solutia.

Defendants distinguish *City of Birmingham,* upon which plaintiff relies, contending that the case involved removal based on possible contractual indemnification and other possible contractual rights the defendants may have had against the WorldCom estate.  The *City of Birmingham* plaintiff requested remand based on its argument that defendants' indemnification and contribution claims against the WorldCom estate would have no "conceivable effect" on the WorldCom estate.  The

---

[10] Specifically, plaintiff has argued: "Solutia, Inc., will be promptly dismissed from this civil action and will not be a party to this civil action any longer."

district court declined to exercise jurisdiction on the basis that any effect on the bankruptcy estate was speculative:

> The primary action between plaintiff and defendants has no effect on the WorldCom bankruptcy estate, but at best is merely a precursor to a potential claim for indemnification against WorldCom by the defendants. The potential claim must still be litigated to determine WorldCom's liability to the defendants. Any potential effect on the bankruptcy estate due to litigation between defendants and WorldCom is speculative and premature. Until defendants actually file suit and obtain a favorable judgment, the potential indemnity claims against WorldCom have no effect on the bankruptcy estate. The outcome of the current action will not bind WorldCom or determine WorldCom's rights, liabilities, or course of action if and when defendants file suit.

Here, defendants argue, the indemnification agreement between Solutia and Pharmacia is <u>not</u> contingent; in fact, prior to filing for bankruptcy, Solutia was fulfilling its obligations under the Distribution Agreement. This agreement, defendant assert, is a primary issue in the bankruptcy proceeding.

### B.   The Plaintiff Has Not Met the Heavy Burden of Establishing that This Court Should Abstain from Exercising Its Jurisdiction.

Abstention, defendants argue, is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *See Private Bus., Inc. v. Alabama Exterior Supply, Inc.*, 2000 U.S. Dist. LEXIS 19841, *12 (S.D. Ala. 2000). Thus, a party requesting abstention "bears the heavy burden of proving some exceptional circumstances to justify the abstention." *See In re Gold*, 247 B.R. 574, 580 (D. Mass. 2000). Thus, defendants argue, abstention from exercising bankruptcy jurisdiction is the exception, not the rule.

### 1.   The Case is Excluded by Statute from the Principles of Mandatory Abstention.

28 U.S.C. Section 1334(c)(2) provides that wrongful death claims are not subject to the

mandatory abstention principles of section 1334(c)(3). Specifically, § 1334(c)(2) exempts "non-core proceedings under section 157(b)(2)(B) of title 28, United States Code." Section 157(b)(2)(B) defines "non-core proceedings" as proceedings involving "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution." Congress, "recognizing that the unpredictable and substantial verdicts that are often produced in personal injury tort and wrongful death claims could have potentially deleterious effects on a debtor's estate--particularly when, because of the automatic stay provisions of the Bankruptcy Code, a debtor-defendant may not have participated in the underlying trial--concluded that, in non-core proceedings such as the one at bar, the mandatory abstention provision of § 1334(c)(2) should not apply." *See Beck v. Victor Equip. Co., Inc.,* 277 B.R. 179, 180 (S.D.N.Y. 2002).

Since these cases are wrongful death and personal injury cases, defendants contend, they are excepted from mandatory abstention. *See In re Pan American Corp*, 950 F.2d 839, 845 (2d Cir. 1991)(exempting proceedings involving personal injury claims from mandatory abstention). Thus, defendants argue, plaintiffs' cases supporting mandatory abstention do not apply, as none of them involved personal injury or wrongful death claims.

## 2. Neither Discretionary Abstention Nor Equitable Remand Is Appropriate In These Actions.

Defendants argues that abstention doctrines aren't "rigid pigeonholes," considering the substantial overlap between the factors appropriate for discretionary abstention and those appropriate for equitable remand. *See Redner v. City of Tampa*, 723 F. Supp. 1448, 1451-52 (M.D. Fla. 1989)(citation omitted). Since remand and abstention are "kindred statutes," defendants contend, circumstances that constrain one constrain the other; thus, the court should consider both statutes

together in conducting its analysis. *See Rand v. Empire Funding Corp.*, 132 F. Supp. 2d 497 (S.D. Miss. 2000).

In determining whether permissive abstention is appropriate, a district court should consider "principles developed under the judicial abstention doctrines." *See In re Lorax Corp.*, 295 B.R. 83, 95 (N.D. Tex. 2003)(quotation omitted). Under these principles, courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Id.* Defendants cite *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976) as follows:

> "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163, 1166 (1959). "(I)t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it." *Alabama Pub. Serv. Comm'n. v. Southern R. Co.*, 341 U.S. 341, 361, 71 S.Ct. 762, 774, 95 L.Ed. 1002, 1015 (1951) (Frankfurter, J., concurring in result).

The inquiry is "not whether there is a substantial reason to exercise federal jurisdiction, but whether there are 'exceptional circumstances' that justify surrendering that jurisdiction." *Northern Ins. Co. v. New York v. David Nelson Constr. Co.*, 41 F. Supp. 2d 1332, 1338 (M.D. Fla. 1999)(citation omitted). The discretionary abstention statute, 1334(c)(1), demonstrates Congress's intent "that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case." *See Cassidy v. Wyeth-Ayerst Labs.*, 42 F. Supp. 2d 1260, 1263-64 (M.D. Ala.

1999)(citing *In re Wood* ). In *Wood*, defendants note, the court found that Congress intended for district courts to exercise their discretionary abstention authority only when appropriate to avoid adjudication of matters better left to the state courts.

In discussing the removal scheme of § 1452, defendants rely on *In re Fairchild Aircraft Corp.*, 1990 WL 119650 (Bankr. W.D. Tex. 1990). This case stated: "[T]he removal scheme of 1452 is an important adjunct to the entire bankruptcy 'single forum' scheme envisioned by Congress in the passage of the Bankruptcy Reform Act of 1978." *In Re Fairchild* further found that the removal scheme "clearly demonstrate[s] the overarching policy that favors the consolidation of matters relating to a bankruptcy case in the federal system and that disfavors piecemeal disposition of bankruptcy-related matters in multiple forums." Finally, *In re Fairchild* acknowledged, the bankruptcy removal statute confers the specific power to assemble in one forum disparate litigation pending in multiple forums.

This court, defendants assert, is faced with the task of considering all of these underlying policies. In particular, defendants request that the court balance the Supreme Court's holding that abstention should occur only in narrow and exceptional circumstances with the interest of promoting comity with state courts. *See, e.g., In re Lorax*, 295 B.R. 83, 95 (N.D. Tex. 2003). Defendants cite *Skinner v. Janus*, 2000 WL 432806, *2 (W.D.N.Y. 2000) for the following: "[Discretionary abstention] must not . . . be employed in a manner that contravenes the purposes underlying the bankruptcy code – namely, to 'centralize the administration of the bankruptcy estate, and eliminate the multiplicity of forums for adjudication of parts of the bankruptcy estate." (Quotation omitted).

To justify equitable remand and/or abstention, defendants argue, naked or conclusory allegations by themselves do not satisfy plaintiff's heavy burden. *See In Enron*, at *9. Rather, the

moving party bears the burden of persuasion that abstention is required. *In re Gold* at 580.

Defendant argues: "[P]laintiff does not even address the multi-factor judicial analysis relevant to her

request for discretionary abstention and/or equitable remand. Instead, relying entirely on her

erroneous mandatory abstention argument, the Plaintiff only makes boilerplate and conclusory

allegations concerning 'delay,' 'prejudice,' and 'comity' in support of her request for equitable

remand."[11] Plaintiff's "superficial allegations," defendants contend, do not meet the heavy burden

of proof. *See In re Enron Corp. Securities, Derivative & ERISA Litigation*, 2002 WL 32107216, at

*9 (S.D. Tex. 2002)(holding party seeking abstention bears the burden of persuasion with respect

to disputed issues, and the burden is not satisfied by conclusory allegations alone).

Moreover, defendant argues, congressional intent reflected by the statutory structure of §§

1334 and 157 mandates that this court retain jurisdiction. Citing the section 157(b)(4) exception to

mandatory abstention for non-core proceedings such as personal injury tort or wrongful death claims,

defendant relies upon *Beck v. Victor Equipment Company*, 277 B.R. 179, 180 (S.D.N.Y. 2002):

> The "non-core proceedings under section 157(b)(2)(B)" consist, in turn, of
> proceedings that would result in "the liquidation or estimation of contingent or
> unliquidated personal injury tort or wrongful death claims against the estate for
> purposes of distribution in a case under title 11." Id. In short, Congress, recognizing
> that the unpredictable and substantial verdicts that are often produced in personal
> injury tort and wrongful death claims could have potentially deleterious effects on a
> debtor's estate--particularly when, because of the automatic stay provisions of the
> Bankruptcy Code, a debtor-defendant may not have participated in the underlying
> trial--concluded that, in non-core proceedings such as the one at bar, the mandatory
> abstention provision of § 1334(c)(2) should not apply. See *In re Pan American Corp.*,
> 950 F.2d 839, 845 (2d Cir.1991).

*In re Pan American*, defendant notes, stated that even though personal injury claims are not

specifically excepted from the permissive abstention provision of section 1334(c), "[a] district court,

---

[11] However, this court notes, plaintiff has apparently addressed the factors. *See supra.*

if it elects to abstain and have [a personal injury] claim liquidated in state court, may be contravening the legislative history." These policy considerations, defendant contends, "mandate against permissive abstention and/or equitable remand in the present lawsuit."

## III.    Plaintiff's Reply

First, plaintiff relies on Judge Acker's April 30, 2004 remand order in what plaintiff contends is a virtually identical case, *Phillip L. Campbell, et al, v. Monsanto Company, et al.*, CV-04-AR-0548-M.[12]  In *Campbell*, plaintiff notes, plaintiff's brief relied on *Thomasson v. AmSouth Bank*. Plaintiff provides the following excerpts from *Thomasson*:

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise.

> Equitable grounds include: (1) forum non conveniens; (2) a holding that, if the civil action has been bifurcated by removal, the entire action should be tried in the same court; (3) a holding that a state court is better able to respond to questions involving state law; (4) expertise of the particular court; (5) duplicative and uneconomic effort of judicial resources in two forums; (6) prejudice to the involuntarily removed parties; (7) comity considerations; and (8) a lessened possibility of an inconsistent result. See Browning v. Navarro, 743 F.2d 1069,

---

[12] Plaintiff attaches that remand order to the reply brief. According to plaintiff, the only difference is that Solutia was a party to that case (unlike here) and defendants here have one less argument than in Judge Acker's case.

Judge Acker's order read:

In accordance with the accompanying memorandum opinion, the motion of plaintiff, Phillip L. Campbell, individually, and as administrator and personal representative of the Estate of Margaret Talley Campbell, deceased, to dismiss the above-entitled action as against defendant, Solutia, Inc., is GRANTED, and the action as against said defendant is DISMISSED WITH PREJUDICE.

Pursuant to 28 U.S.C. section 1447(c), the court finds that it lacks subject-matter jurisdiction, because the action does not arise under title 11 and is not related to a case under title 11. In the alternative, on equitable grounds, as authorized by 28 U.S.C. section 1452(b), the case is due to be remanded even if 'related to' jurisdiction does exist. In either even, plaintiff's motion to remand is due to be, and is hereby GRANTED, and the case is hereby REMANDED....

1076 n. 21 (5th Cir.1984).

This court is of the opinion that the ends of justice might be better served if this case is remanded to the state court (this being a consideration of forum non conveniens). As discussed before, the state court has already dealt with the merits of this lawsuit when it granted the temporary restraining order. This court has only dealt with the procedural aspects in this case. Therefore, the state court has a "head start" on the merits of this matter which should enable the state court to resolve this matter faster than it could be resolved in this court. This "head start," however, is only a small head start that by itself would not merit remanding this case.

In addition, there is the consideration of comity which weighs in favor of remanding this case. The addition of comity would still not be enough to tip the scales of equity in favor of remanding this case without help from the abstention doctrine. Although this court has found that it is not necessary to directly consider abstention (and there is some question whether the mandatory abstention would be applicable in this case), the congressional mandate of abstention in certain "related to" cases enhances the importance of comity as an equitable ground for remand.

Section 1334(c) of Title 28 states:

> (1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State Courts or respect for state law, from abstaining from hearing a particular proceeding arising under Title 11 or arising in or related to a case under Title 11.
> (2) Upon timely motion of a party in a proceeding based upon a state law claim or state law cause of action, related to a case under Title 11 but not arising under Title 11 or arising in a case under Title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction....

This court views this section as establishing a Congressional preference for abstention in proceeding like the one at bar. The present case is based upon Alabama law on fraud and misrepresentation. This case could not have been brought in federal court absent jurisdiction under § 1334(b). Thus, unless this case is before this court under "arising in" jurisdiction, this court would have to abstain under § 1334(c)(2). Assuming that this court has "arising in" jurisdiction, this court can still follow the Congressional policy set out in § 1334(c) by remanding this

23

case. The court interprets this policy as directing federal courts to allow state
courts to hearing state law matters when the only basis for federal jurisdiction is
§ 1334(b). This policy is closely related to comity and this tips the scales of equity
in favor of remanding this case. The court generally adopts the well stated and
reasoned Findings of Fact and Conclusions of Law proposed by the Bankruptcy
Judge and will enter an appropriate order.

Additionally, plaintiff argues, defendant has misled the court regarding 28 U.S.C. § 157.

According to plaintiff, this section does not mandate that personal injury cases be sent to a district

court where the bankruptcy case is pending trial. Instead, plaintiff argues, the section provides for

a right to try claims against the bankrupt debtor in the district court as opposed to the bankruptcy

court, preserving the right to a jury trial. Plaintiff alleges that the origin of the code section was the

A.H. Robins bankruptcy case in the 1980's. In that situation, plaintiff argues, the contention was that

A.H. Robins was not really insolvent but was using bankruptcy to avoid liabilities.   The

congressional compromise, plaintiff contends, was to give a right to trial by jury in the district court

to personal injury and wrongful death claimants desirous of fighting those claims against the debtor

itself.

The instant case, plaintiff argues, is not a claim against the debtor, which would be handled

if at all by the proof of claim process, but rather is "a claim against non-bankrupt parties who are

trying to ride on the coat-tail's of their subsidiary's bankruptcy." As such, plaintiff contends, section

157(b) does not apply. Section 157(b) excepts from mandatory abstention under 1334(c)(2) "non-

core proceedings under section 157(b)(2)(B) of Title 28." Section 157(b)(2)(B) in turn reads: "(B)

allowance or disallowance of claims against the estate or exemptions from property of the estate, and

estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13

or title 11 **but not the liquidation or estimation of contingent or unliquidated personal injury**

24

**tort or wrongful death claims against the estate for purposes of distribution in a case under title 11…"** (Emphasis added).  The bolded language, plaintiff asserts, only excepts from mandatory abstention a direct claim against the debtor's estate.

According to plaintiff, defendant's reliance on 28 U.S.C. 157(b)(5), which requires the district court to "order that personal injury tort and wrongful death claims . . . be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending," does not mean that cases like the instant one must be sent to New York and tried there unless the bankruptcy court decides otherwise.  Plaintiff contends: "It must be recalled that the phrase 'tort and wrongful death claims' is, in the statute, a term of art.  A 'Claim' is a claim against the bankrupt estate, and is the type claim described in 28 U.S.C.A. §§ 157(b)(4) as 'Non-core proceedings under section 157(b)(2)(B).'"

## CONCLUSIONS OF COURT

This court conducted a recorded hearing on June 14, 2004.  At that hearing, all parties acknowledged that the only possible basis for federal jurisdiction is that the actions are "related to" a pending Chapter 11, Title 11 Bankruptcy action of Solutia pending in New York.  The parties also agreed at the June 14, 2004 hearing that any automatic reference of these cases to the bankruptcy court of this district are withdrawn and that these issues are to be initially decided by this court.

Reduced to their essence, the issues before the court are (as agreed by the parties):

(1) Is there "related to" federal jurisdiction?

(2) Are the actions exempted from the mandatory abstention provisions of bankruptcy law?  The defendants acknowledge that if they are not so exempted, the cases are due to be

remanded.

(3) Should the cases be remanded based upon discretionary abstention provisions of 28 U.S.C. § 1334(c)(1)?

(4) Should the cases be remanded on equitable grounds under 28 U.S.C. § 1452(b)?

The court starts with the conclusion that there is "related to" jurisdiction. Assuming, without deciding, that the indemnity provisions are enforceable, the results in the cases could have a "conceivable" effect on the bankruptcy estate.

The court will not reach the issue of whether mandatory abstention applies. There are reasonable arguments both ways, but, the issue is best left for Circuit Court or Supreme Court determination. In view of this court's ultimate conclusion, it is not necessary for the court to reach that issue.[13]

The last two issues are related. The "interest of justice" provision of 28 U.S.C. § 1334(c)(1) is akin to the "any equitable ground" provision of 28 U.S.C. § 1452(b). *Christo v. Padgett,* 223 F.3D. 1324 (11th Cir. 2000) would seem to suggest that if abstention is appropriate, remand is likewise appropriate.

This court concludes that, whether based upon equitable remand principles or interest of

---

[13]*See In re Dow Corning Corp.,* 86 F.2d 482 (6th Cir. 1996); *Christo v. Padgett,* 223 F.3d. 1324 (11th Cir. 2002); *Bridgestone/Firestone, Inc., v. Products Liability,* 2002 W.L. 3124317 (S.D. Ind. 2002); *Beck v. Victor Equipment Co., Inc.,* 277 B.R. 179 (S.D.N.Y. 2002);; *Kadell v. Thompson,* 84 B.R. 878 (N.D.Ga. 1988); Practicing Law Institute's "Jurisdiction, Venue, Procedure and Appeals" (1999), 7.4 ("Personal injury and wrongful death claims are not subject to mandatory abstention, but are subject to permissive abstention. If permissive abstention is ordered, the claims may be remanded to the state court from which they were removed.") One of the real questions in this regard may be whether exemption of personal injury and death cases from mandatory abstention applies to non-debtors. In this regard, see Moore's Federal Practice 3rd, § 107.15 [8][c] (ii): ("Mandatory abstention does not apply to personal injury or wrongful death claims against the debtor. In the mass tort context, it does apply to personal injury or wrongful death claims against non-debtor or co-defendants even if these defendants have contribution claims against the debtor.")

justice principles, these cases should be remanded.

While this court does not reach the issue of whether the indemnity provisions are enforceable as to any alleged misconduct of Pharmacia itself, the court does note that a substantial factor in any involvement of the debtor Solutia is the alleged misconduct of Old Monsanto (Pharmacia) and that, as suggested by Solutia in its press release, it had "legacy liabilities" which it was "required to assume" from Old Monsanto (Pharmacia), the "negative impact" of which caused it to make the decision to file its bankruptcy petition. This court concludes that it would be inequitable and not in the interest of justice or in the interest of comity with state courts to allow these cases to be removed.

This court is satisfied that:

(1) The remand of these cases would have no effect on the efficient administration of the bankruptcy estate;

(2) State law issues predominate;

(3) There is at least an inference of judge shopping beginning with the steps taken to "spin off Solutia" and saddle it with liability and indemnification. One could reasonably ask why it was necessary to saddle a new corporation with the unliquidated, unlimited, unknown liability of another corporation;

(4) Plaintiffs are entitled to jury trials;

(5) These cases involve non-debtors;

(6) There are issues of comity; and

(7) A failure to remand would prejudice the rights of the plaintiffs to select their own forums. This would be particularly true if the district court in which the bankruptcy case is pending were to decide that the cases should be tried in New York. See 28 U.S.C. § 157(b)(5).

27

The court has received the usual contrary arguments with regard to the enforceability of the indemnity agreement under Delaware law. It is not necessary for the court to determine that issue. This court's decision is significantly influenced by the fact that the Solutia bankruptcy was the "legacy" of the Old Monsanto operation. Whether or not there is a pure legal distinction between indemnifying against future misconduct of the indemnitee and past conduct of the indemnitee, there are equitable and public interest distinctions with regard to non-debtors basing federal jurisdiction on the bankruptcy of the indemnitor. There is no equitable or public interest reason for involving the plaintiff in disputes between warring corporate relatives. This court can fathom no equitable reason for allowing indemnification by a bankrupt debtor whose existence was created by the indemnitee to create federal jurisdiction; particularly when the siring corporation's alleged misconduct, which forms the basis for the immediate action under consideration, contributed to the bankruptcy.

The "spin off" of Solutia was on September 1, 1997 after Old Monsanto had been subjected to legal actions premised on the same alleged conduct as is involved in these cases. This court is not holding that Solutia was a total Potemkin type corporation. Regardless of whether the potential for lawsuits was the main motivation for the spin off of Solutia, however, that potential was obviously foreseeable. There is a reasonable inference that it was a motivating factor.

According to the defendants' attorneys, Solutia is liable for all it may be determined that defendants owe, regardless of any position Solutia may take later that the defendants should not have been held liable. Par. 4.03(c) of the Distribution Agreement provides for a reduction in the indemnity for any insurance proceeds. There seems to be no equitable reason to allow removal in favor of insurers, if any there be.

28

Ultimately, the court concludes that a fair evaluation of the circumstances and evidence leads the court to believe that equity and the interest of justice favor the plaintiff. The cases will be remanded.

This the _____ day of July, 2004.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

29